**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

Gary Vaughn,

    Petitioner,

v.

Warden Jordan Hollingsworth,

    Respondent.

---

Civil Action No. 14-6470(RMB)

**OPINION**

**BUMB**, District Judge

**I.   BACKGROUND**

Petitioner, presently incarcerated at Cambria County Prison in Ebensburg, Pennsylvania (Change of Address, ECF No. 10), filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 on October 15, 2014. (ECF No. 1.)[1] The petition challenges sanctions imposed as a result of Petitioner's disciplinary hearing at FCI Elkton in Lisbon, Ohio. (Id.) On November 24,

---

[1] At the time Petitioner filed the present petition, he was confined at FCI Fort Dix in Fort Dix, New Jersey, and this Court retains jurisdiction. See Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release") (citing Ex parte Endo, 323 U.S. 283, 306 (1944)).

2014, this Court ordered Respondent to show cause, in writing, as to why Petitioner shall not be granted a curative disciplinary proceeding. (Memorandum Opinion and Order (ECF No. 4.)) The Court also ordered Petitioner to file an affidavit clarifying whether, during the incident at issue, he did or did not make physical movements with an aim to assault his attacker. (Id.)

Petitioner asserted two grounds for relief in his habeas petition:

> (1) I was unconstitutionally disciplined for engaging in a fight during a situation where I was the victim of an assault which caused several severe injuries and broken bones. Under the totality of the circumstances, I had no other reasonable options than to defend myself and to further protect myself from further assault and injury. I was clearly not the instigator nor the aggressor and had no other options under the circumstances.
>
> (2) The DHO [discipline hearing officer] intentionally misquoted my statement. I did not admit fighting. I only admitted to defending myself. I did not make the statements that were included in the DHO's report. They are false.

(Pet. (ECF No. 1 at 6-7.))

In his supplementary affidavit, Petitioner asserted the following facts. (Petitioner's Affidavit in Support of Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 5.)) On October 14, 2013, Petitioner was incarcerated at FCI Elkton in Lisbon,

Ohio. (Id., ¶ 1.) Petitioner was in his assigned cubicle when Inmate Wilson, without provocation, entered the cubicle and punched Petitioner, breaking his nose. (Id., ¶¶ 4-6.) Wilson kept punching Petitioner, who grabbed Wilson in a "bear-hug" to stop him. (Id., ¶ 8.) They fell to the ground and Petitioner called for staff. (Id., ¶ 9.) Petitioner released Wilson when he said he "was done." (Id.)

Vaughn and Wilson were transported to the Special Housing Unit. (Id., ¶ 12.) Vaughn suffered three bone fractures, and Wilson suffered a few scratches. (Id., ¶ 13.) There was video footage of the incident, and Case Manager Vince Burton said that he watched the video. (Id., ¶ 14.) After investigation, Burton believed Wilson was paid to assault Vaughn. (Id.) Burton advised Vaughn that there was nothing else Vaughn could have done, and an incident report would not be issued. (Id., ¶ 15.)

The following day, S.I.S. Lieutenant Georgeoff issued Vaughn an incident report, at the same time telling Vaughn he would have done the same thing to protect himself but "when there is a physical altercation, all inmates receive shots." (Id., ¶ 16.) Georgeoff predicted a D.H.O would review the video footage and "throw the shot out." (Id.)

Burton conducted the Unit Disciplinary Committee Hearing ("UDC").[2] (Id. at 17.) Vaughn wanted to call Burton as a witness because he had expressed an opinion favorable to Vaughn about the incident, after watching the video footage. (Id.) Because he was the hearing officer, Burton could not be a witness. (Id.)

The D.H.O. hearing was conducted in front of Mr. Montgomery on October 18, 2013. (Id., ¶ 18.) When asked, Vaughn said he was not guilty of fighting, he was only defending himself. (Id.) Montgomery stated "inmates are not allowed to defend themselves." (Id.)

Vaughn argues that the actions and movements he made with respect to Wilson were limited to "those completely necessary to prevent further injury and assault and were not made with an aim to assault or attack Inmate Wilson." (Id., ¶ 19.) Vaughn points out that his injuries were more significant than injuries, or the lack thereof, suffered by Wilson, even though Wilson is approximately 5'9" tall and 170 pounds compared to Vaughn's 5'11" height and 280 pounds. (Id.)

---

[2] "A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete." 28 C.F.R. § 541.7. "The UDC ordinarily consists of two or more staff. UDC members will not be victims, witnesses, investigators, or otherwise significantly involved in the incident." Id. § 541.7(b). If an inmate is charged with a high severity prohibited act, "the UDC will automatically refer the incident report to the DHO for further review." Id. § 541.7(a)(4).

4

Respondent filed an Answer with exhibits. (Respondent's Answer to Petition for a Writ of Habeas Corpus and Statement as to Why Petitioner is Not Entitled to a Curative Disciplinary Hearing ("Answer") (ECF Nos. 6, 7, 8)). In the Answer, Respondent asserted the following facts. At FCI Elkton on October 14, 2013, Petitioner was issued Incident Report No. 2503983 for fighting with another person, a Code 201 violation. (Incident Report, Ex. 5 to Declaration of Kimberly Sutton ("Sutton Decl.") (ECF No. 6-5.) SIS Lieutenant M. Georgeoff described the incident in the report:

> On October 14, 2013, at approximately 2:39 p.m., the A Unit Officer notified the Control Center via radio he had a medical emergency in cubicle AA37. After the Operation[s] Lieutenant had responded to AA Unit he advised the Control Center to announce a call for staff assistance due to observing inmate Vaughn . . . covered with blood from his nasal region, the cubicle floor, as well as clothes hanging from the wall. CCTV footage was reviewed and revealed inmate Wilson enter cubicle AA37 at approximately 2:38 p.m. and strike inmate Vaughn . . . with a closed fist punch. Both inmates are observed striking each other to the upper and lower torso area.
>
> Inmate Vaughn was medically assessed by S. Penwell, RN and received 3 scratches 5cm each to the middle of his back, redness to the left of anterior chest, redness to the right upper abdomen, swelling to his nose and right hand.

(ECF No. 6-5 at 1.)

Upon delivery of the incident report to Petitioner, he waived his right to remain silent and said the report was false. (ECF No. 6-5 at 4.) The investigator found the charge valid and recommended a Unit Team Hearing. (Id.)

On October 15, 2013, the Unit Disciplinary Committee ("UDC") held an initial hearing on the incident report. (Id. at 3.) Petitioner was read his rights and then made the following statement:

> I was in my cube and out of nowhere inmate Wilson came in and punched me in the nose. At that point I grabbed a hold of him to protect myself and we fell in the corner and I was on top of him until he said he would let me out. I was not fighting I had to protect myself. I was not aggressively fighting I was defending myself.

(Id.) The UDC referred the incident report to a DHO for a disposition. (Id.) Petitioner signed a "Notice of Discipline Hearing Before the DHO" on October 15, 2013. (Notice of Hearing, Sutton Decl., Ex. 7 (ECF No. 6-7 at 1.)) On the form, the inmate is asked whether the inmate wants a staff representative at the hearing, and "do not" is checked. (Id.) The form also asks whether the inmate wishes to have witnesses, and "do not" is checked. (Id.)

The DHO hearing was held on October 18, 2013, and Petitioner waived his right to a staff representative and did not present any evidence or request witnesses. (DHO Hearing

6

Report, Sutton Decl., Ex. 8 (ECF No. 6-8 at 2.)) The DHO recorded Petitioner's statement, "[t]he incident report is partially true; the fighting part is true, I am guilty of fighting with Wilson. I did not start the fight, he hit me first and I was just defending myself." (Id.)[3] The D.H.O. wrote in the report that he considered the following information in reaching his decision: (1) Petitioner's statement; (2) the incident report and investigation; (3) nine supporting memoranda from FCI Elkton staff; (4) photographs; (5) medical assessments of Wilson and Petitioner; (6) and the video footage depicting the incident. (Id. at 3.)

The DHO found Petitioner guilty and imposed sanctions including: (1) 180 days disciplinary segregation (with 150 days suspended pending 180 days of clear conduct); (2) disallowance of 27 days good conduct time; and (3) loss of visiting privileges for 180 days. (Id. at 5.) Petitioner exhausted his administrative remedies challenging the DHO's decision with the BOP. (Sutton Decl. (ECF No. 6, ¶ 4.))

---

[3] In his Declaration, DHO Timothy Montgomery explained that he does not specifically recall Petitioner or his hearing. (Declaration of Timothy J. Montgomery (ECF No. 7, ¶ 3.) He felt certain that he recorded Petitioner's statement accurately because his practice was to take handwritten notes during the hearing on the DHO Interview Form. His practice was to write the exact statements of the inmate and any witnesses, and later transcribe the statements onto the DHO Report, then shredding the DHO Interview Form. (Id.)

7

Respondent argues that Petitioner received every safeguard to which he was constitutionally entitled, and there is no evidence to support petitioner's claim that the DHO fabricated Petitioner's statement. (Answer (ECF No. 8 at 11.)) Respondent contends that the DHO's decision meets the required evidentiary standard of "supported by some evidence." (Id. at 15-16.) Finally, Respondent argues that the sanctions imposed are well within the range of available sanctions. (Id. at 17.)

In reply, Petitioner contends that his testimony at the DHO hearing was incorrectly recorded as an admission that he "partook in the altercation," and this constitutes a deficiency that requires a curative hearing. (Petitioner's Reply to Respondent's Answer to Petition for a Writ of Habeas Corpus and Statement as to Why Petitioner is Not Entitled to a Curative Disciplinary Hearing ("Reply") (ECF No. 9 at 1.)) Petitioner further alleged that the absence of Mr. Burton as a staff representative or a witness severely tainted the DHO hearing. (Id. at 6.)

According to Petitioner, Case Manager Vince Burton was one of the first staff members to respond to the fighting incident. (Id. at 5.) Burton told Petitioner that he viewed the video footage and spoke to several inmates. (Id.) Vaughn asked Burton whether he would be in trouble over the incident, and Burton said "not at all, I watched the video and saw exactly what

8

happened and as far as I am concerned you were defending yourself and there was nothing else that you could have done." (Id.)

Burton conducted the UDC hearing. (Id. at 6.) He explained to Petitioner that, by policy, he had to refer a 200 series violation to a DHO. (Id.) Burton predicted the DHO would expunge the violation after watching the video. (Id.) Vaughn asked Burton to be his staff representative and also a witness, "to explain his version of what was viewed on the CCTV footage." (Id.) Burton said he could not because he was assigned as "UDC." (Id. at 7.) This is why Petitioner did not ask for a staff representative or any witnesses. (Id.)

Vaughn explained this to the DHO, who attempted to call Burton during the hearing, but Burton could not be reached. (Id.) The DHO denied Petitioner's request to postpone the hearing until Burton could appear. (Id.) Vaughn's requests to see the video footage for himself were denied by Burton, Georgeoff, and DHO Montgomery. (Id. at 8.)

According to Petitioner, at the hearing the DHO told Vaughn he had not reviewed the video footage, but he was considering the statement provided in the incident report. (Id.) Lieutenant Georgeoff wrote the incident report, stating that he viewed the video and observed "both inmates striking each other to the upper and lower torso area." (Id. at 9.) Petitioner argues

9

Georgeoff was not an eyewitness to the altercation, and neither the medical assessments nor the staff memoranda support a finding that Petitioner engaged in fighting with Wilson. (Id. at 8-9.)

On September 9, 2015, this Court ordered Respondent to clarify whether the DHO watched the video footage of the alleged fighting incident. (ECF No. 12.) Respondent submitted the Declaration of D.H.O. Timothy Montgomery, declaring that he watched the video footage prior to the hearing and found that it supported the charge of fighting, Code 201. (ECF No. 13-1).

## II. DISCUSSION

### A. LEGAL STANDARD

A challenge to a prison disciplinary proceeding that resulted in loss of good conduct time is cognizable under 28 U.S.C. § 2241. McGee v. Schism, 463 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (citing Wolff v. McDonnell, 418 U.S. 539, 564–65 (1974)). An inmate is entitled to the following due process protections in prison disciplinary hearings: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill, 472 U.S. 445, 454

(1985). An inmate does not have the right to select the staff member to serve as his representative. Mitchell v. Romine, 158 F. App'x 367, 369 (3d Cir. 2005) (per curiam).

If the DHO relied on the incident report as "some evidence" that the prisoner was guilty of fighting, the petitioner may be entitled to a curative hearing if the prisoner was deprived of a meaningful opportunity to call witnesses to refute an allegedly false statement in the incident report. Mitts v. Zickefoose, 869 F.Supp.2d 568, 577 (D.N.J. April 24, 2012). The "some evidence" standard, however, is minimal "and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence." Pachtinger v. Grondolsky, 340 F. App'x 774, 777 (3d Cir. 2009) (per curiam). For example, evidence that two homemade shanks were found in a space accessible to the charged inmate was enough to constitute "some evidence" supporting a prison disciplinary sanction for violation of possession of a weapon. Denny v. Schultz, 708 F.3d 140, 147 (3d Cir. 2013).

**B. ANALYSIS**

Petitioner contends there was no evidence supporting the DHO's decision, and his inability to use Case Manager Burton as a staff representative or a witness tainted the hearing. Petitioner further asserts that the DHO misquoted Petitioner's

statement at the hearing; Petitioner did not admit guilt to the charge of fighting.

Respondent argues Petitioner declined the opportunity to have a staff representative, present evidence, or call witnesses. Furthermore, the DHO cited evidence that he relied upon in reaching his decision, which meets the "some evidence" standard, even if Petitioner's statement from the hearing is discounted. Petitioner asserts that none of the other evidence cited by the DHO suggests Petitioner was guilty, with the exception of Georgeoff's statement in the incident report about the video. Petitioner was never allowed to watch the video, and they were unable to reach Burton during the hearing to present his opinion of what the video showed.

There is no due process violation when a petitioner's request to view the video footage of the incident leading to the disciplinary charge is denied, as long as the petitioner was informed of the contents of the video footage and was allowed to refute it. Pittman v. Bledsoe, 442 F. App'x 639, 641 (3d Cir. 2011) (per curiam). Here, as indicated by signature of the delivering officer, the incident report was delivered to Petitioner on October 14, 2013 at 7:51 p.m. (ECF No. 6-5 at 2). Thus, Petitioner knew in advance that the incident report contained Georgeoff's statement that he viewed the video

12

footage, and it showed Wilson and Vaughn striking each other in the torso.

Failure to allow Petitioner to watch the video did not violate due process because he was given the opportunity to refute Georgeoff's description of what the video showed. The remaining issue is whether due process required that Petitioner be allowed to call Burton as a witness to testify that the video did not show Petitioner striking Wilson.

An inmate has a significantly limited right to call witnesses at a prison disciplinary hearing. Ponte v. Real, 471 U.S. 491, 498-99 (1985). The inmate's right to call witnesses is available "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id., (quoting Wolff, 418 U.S. at 566.)

The record indicates that when presented with written notice of the DHO hearing, Petitioner did not request a staff representative or any witnesses to appear at the hearing. See Drabovskiy v. Allenwood, 587 F. App'x 47, 49 (3d Cir. 2015) (per curiam) (district court properly denied habeas relief on claim that DHO failed to investigate and interview witnesses where inmate waived right to call witnesses in paperwork he completed before hearing.) According to Petitioner, he asked the DHO to call Case Manager Burton as a witness during the hearing, and the DHO tried to contact Burton but they could not reach him.

13

See Portee v. Vannatta, 105 F. App'x 841, 843 (7th Cir. 2002) (per curiam) ("an inmate who waits to identify witnesses until the day of the hearing waives that right") (citing Miller v. Duckworth, 963 F.2d 1002, 1004 n. 2 (7th Cir. 1992)).

After a petitioner waives his right to call witnesses prior to the hearing, he must show extraordinary circumstances that required prison officials to permit him to revoke his waiver in the middle of the disciplinary hearing. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1424-25 (M.D. Pa. 1994).

> Prison officials have a substantial interest in knowing prior to the time of the hearing whether an inmate intends to call either staff or inmate witnesses. Such notice enables officials to arrange for prisoners or staff to be available at the time of the hearing. Absent a showing of surprise or other unusual circumstances, since Petitioner clearly waived his right to call witnesses prior to the hearing, prison officials did not violate due process by refusing to permit Petitioner to revoke that waiver in the middle of his hearing.

Id. at 1425.

Here, Burton was not a witness to the incident. He watched the video footage and allegedly would have offered the opinion that Petitioner did not strike Wilson. There are no extraordinary circumstances that would have required the DHO to allow Burton to testify before reaching his decision,

14

particularly because the video evidence was available to the DHO.

 The DHO Report indicates:

> [T]he DHO considered the CCTV video footage of this interaction of you and inmate Wilson, Michael, Reg. No.: 15082-032, as a result of your interaction/fighting with each other on October 14, 2013, at approximately 2:37 p.m., in the Alpha-Alpha Inmate Housing Unite (Cubicle 37) at FCI Elkton, Ohio.

(ECF No. 6-8 at 5.) For clarification, Respondent submitted the Declaration of DHO Timothy Montgomery (ECF No. 13-1), wherein Montgomery declared, under penalty of perjury, that he personally watched the video footage before the hearing and relied on the footage in deciding Petitioner was guilty of fighting. Petitioner filed a response, questioning how the DHO now remembered that he watched the video, after he stated in a declaration, one year ago, that he did not remember Vaughn or the incident. (ECF No. 14).

 The DHO report, written near the time the DHO rendered his decision, listed the video as evidence "considered" by the DHO, which certainly implied that the DHO had watched the video. (ECF No. 6-8 at 5.) For clarification, DHO Montgomery declared that "whenever video footage is relied upon in the issuance of an incident report, I personally review the footage and maintain a

15

copy for my records." (ECF No. 13-1). The Court credits DHO Montgomery's statements.

Failure to call Burton as a witness to testify about what the video showed did not violate Petitioner's rights because the video itself was the best evidence of the inmate altercation, given there were no other witnesses. See Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise); see e.g. U.S. v. Brown, Crim. No. 08-0098, 2009 WL 2338112, at *2 (W.D. Pa. July 29, 2009) (precluding government agents from testifying about contents of video); U.S. v. Miller, 248 F. App'x 426, 430 (3d Cir. 2007) (per curiam) (admission of testimony about what was in a written policy violated best evidence rule where original written policy was not in evidence).

## IV.   CONCLUSION

This Court finds the incident report and the video footage meet the "some evidence" standard to support the DHO's decision, even if Petitioner's statement of guilt to the DHO is ignored. Furthermore, Petitioner was not denied due process because Burton was unavailable as a staff representative or a witness. Thus, in the accompanying Order filed herewith, the Court will deny the habeas petition.

16

                                               <u>s/Renée Marie Bumb</u>
                                               RENÉE MARIE BUMB
                                               United States District Judge

Dated: <u>October 5, 2015</u>